**UNITED STATES of America, Appellee,**

v.

**Robert William KREVSKY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Benny King DARBY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Victor Eduardo BONILLA, Appellant.**

**Nos. 83–2189, 83–2206 and 83–2341.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1984.

Decided Aug. 24, 1984.

Rochman, Platzer & Fallick, New York City, for Krevsky.

Richard C. Turner, U.S. Atty., Ronald M. Kayser, Asst. U.S. Atty., Des Moines, Iowa, for U.S.

Paul A. Zoss, David L. Davitt, Myers, Knox & Hart, Des Moines, Iowa, for Darby.

Law Offices of Rex Ryland, Jr., P.A. by Rex Ryland, Jr., Amanda Maxwell, South Miami, Fla., for Bonilla.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Robert William Krevsky, Benny King Darby, and Victor Eduardo Bonilla appeal from final judgments entered in the District Court[1] for the Southern District of Iowa upon jury verdicts finding them guilty of conspiracy to distribute cocaine, 21 U.S.C. § 846, conspiracy to import cocaine, 21 U.S.C. § 963, and traveling in interstate commerce to facilitate their unlawful activities, a Travel Act violation, 18 U.S.C. § 1952(a)(3). The district court sentenced each to two concurrent ten-year terms, followed by five years probation.

For reversal each appellant raises several arguments. Krevsky argues that the district court erred in refusing to declare a mistrial following juror exposure to prejudicial publicity during trial and abused its discretion in failing to sentence him under the provisions of the Young Adult Offenders Act, 18 U.S.C. § 4216. Bonilla argues that the district court erred in refusing to declare a mistrial; that the government failed to establish a business enterprise existed, an essential element of a Travel Act violation; and that the evidence was insufficient to support convictions for conspiracy to import and to distribute cocaine. Darby adopts Krevsky's mistrial argument and Bonilla's first two arguments and also argues that the district court erred in denying his motion for severance from Bonilla. All appellants argue that the district court erred in admitting hearsay statements under the coconspirator's exception, Fed.R. Evid. 801(d)(2)(E). For the reasons discussed below, we affirm the judgments of the district court.

The government's principal witness was Steven Streeter, a pilot and airport manager from Bloomfield, Iowa. In March 1983 Streeter, a casual acquaintance of Edward Merchant,[2] received numerous phone calls and inquiries from Merchant about leasing a King Air aircraft for a group in Florida with whom Merchant was acquainted. Merchant told Streeter the group was willing to pay $75,000 for the lease, giving Streeter a profit of $25,000. Streeter contacted the FBI, who asked him to continue his contacts with Merchant.

Subsequently, Streeter, through the FBI, located a suitable airplane and informed Merchant that the deal could be consummated in Des Moines, Iowa. On March 31, 1983, Merchant and Bonilla flew from Miami to Des Moines, under assumed names, and were met by Streeter and taken to Streeter's motel room. Streeter wore a transmitting device and the FBI also monitored Streeter's motel room. Merchant told Streeter they had brought part of the cash and the rest of the money would be brought by associates within the next forty-eight hours. Bonilla inquired whether the pilots of the aircraft knew the purpose for which the plane would be used. Bonilla was worried that the owners might have suspicious ideas and did not want their suspicions affirmed. The group then went to view the airplane. Bonilla told Streeter that he had been smuggling marijuana but now had switched to cocaine. Bonilla also discussed leasing another plane through Streeter. Streeter was given $17,000 in cash as a deposit on the plane and told to obtain two cashier's checks for $8,500 each to avoid certain cash reporting requirements. Upon Streeter's return to the motel, Merchant called Krevsky in Miami to tell him all was going well and to bring the rest of the money. Streeter and Merchant then went for a car ride during which Merchant discussed the cocaine smuggling op-

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

2. Merchant's trial was severed from appellants' trial.

eration and the other participants, including Krevsky and Darby.

On April 1, 1983, Krevsky and Darby flew from Miami to Des Moines, also under assumed names, and met the group at the motel. They gave Streeter the remaining money and he left to get cashier's checks to give to the pilots. Bonilla, Krevsky and Darby went to a nearby bar where they celebrated and planned how to spend the $20 million they expected to receive from the forthcoming venture. Their conversation was overheard by a local law enforcement agent. The three were arrested shortly thereafter in the bar.

*Prejudicial Publicity*

Prior to the selection of the jury, the local radio and television stations and newspapers carried stories about the trial. The district court sustained a motion to strike any prospective jurors who had heard or seen any such stories. The fourteen jurors selected stated under oath they had not been exposed to the news coverage of the trial. The district court instructed the jurors to avoid any news coverage of the trial before they reached a verdict.

After the second day of trial, the media carried more stories about the trial. Before the trial continued, the district court interviewed each juror separately to discover whether they had been exposed to this publicity. The district court found seven jurors had heard or seen some reference to the trial, but each had then followed the district court's instructions and had thereafter avoided such stories. The district court concluded that the jury had not been tainted by the limited exposure to prejudicial publicity and denied the motions for mistrial.

Darby and Krevsky also argue that the district court abused its discretion in refusing to grant a mistrial. Appellants contend that the publicity, which included an allegation that one of the defense attorneys was under investigation for tampering with justice and referred to the large amount of cocaine involved, substantially prejudiced the jury, even though the jury was properly instructed to ignore such information.

The district court has great discretion in ruling on the issue of prejudice resulting from media coverage concerning an ongoing trial. *United States v. Burchinal*, 657 F.2d 985, 996 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Williams*, 604 F.2d 1102, 1114 (8th Cir.1979). Here the record shows that the district court followed the procedure recommended in *United States v. Hood*, 593 F.2d 293, 296 (8th Cir.1979). After making an initial determination that at least part of the publicity created a danger of substantial prejudice to appellants, the district court asked the jurors individually whether they had in fact been exposed to the prejudicial information, then ascertained that the extent and effect of the prejudicial information was limited, and concluded that granting the motions for mistrial was not necessary to protect appellants' rights to a fair trial. *See also United States v. Burchinal*, 657 F.2d at 997. We find no abuse of discretion in the district court's refusal to grant a mistrial on the basis of juror exposure to prejudicial publicity.

*Mistrial*

The district court had made a pretrial ruling that questions about the admissibility of evidence of other crimes, Fed.R. Evid. 404(b), would be considered out of the presence of the jury. Despite this pretrial ruling, Streeter testified during the government's case that Bonilla had indicated that he had been involved in marijuana smuggling. Following defense objections and motions for mistrial, the district court ruled that the statement was inadmissible, instructed the jury to disregard the statement and denied the motions for mistrial. Bonilla and Darby argue that the statement was extremely prejudicial and that the district court abused its discretion in denying the motions for mistrial.

The district court ruled that the statement was inadmissible, promptly struck the testimony and cautioned the jury. *United States v. Williams*, 604 F.2d at 1126. We

find no abuse of discretion in the district court's refusal to grant a mistrial. We admonish the government's attorney to scrupulously follow the pretrial directions of the district court. We may not be as receptive to similar claims of inadvertence in the future.

*Severance*

■ Darby argues that the district court abused its discretion in denying his motion for severance. "The general rule is that persons charged in a conspiracy should be tried together, especially when proof of the charges is based upon the same evidence and acts." *United States v. Smith*, 578 F.2d 1227, 1236 (8th Cir.1978); *see United States v. Engleman*, 648 F.2d 473, 480 (8th Cir.1981); *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). The denial of severance is not grounds for reversal unless real prejudice and an abuse of discretion are shown. *E.g., United States v. Burchinal*, 657 F.2d at 995. "Severance becomes necessary where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. Jackson*, 549 F.2d at 525. Severance requires more than merely showing that the defendant would have had a better chance of acquittal at a separate trial. *E.g., United States v. Smith*, 578 F.2d at 1236.

■ We have carefully reviewed the record and find no abuse of discretion in the district court's refusal to grant Darby's motion for severance. This prosecution involved conspiracy charges and proof of the charges was based upon the same evidence. The district court cautioned the jury to consider the evidence against each defend-

ant separately. The evidence was not difficult to compartmentalize and in fact the jury acquitted one of the defendants of the conspiracy charges.

*The Travel Act Violation*

■ Bonilla and Darby argue that no Travel Act violation was established because the government did not prove the existence of a business enterprise, a necessary element. Appellants argue that the government must prove that they engaged in a continuous course of conduct in order to establish the existence of a "business enterprise" within the meaning of the Travel Act, 18 U.S.C. § 1952(a), (b).[3] Appellants argue that at most the government has shown only that they were involved in one conspiracy to import and distribute cocaine. Appellants argue that one episode of unlawful activity cannot constitute a business enterprise.

"Although the Travel Act does not define 'business enterprise,' the term has consistently been construed to require 'a continuous course of conduct.'" *See, e.g., United States v. Corbin*, 662 F.2d 1066, 1072–73 (4th Cir.1981) (cases cited therein). In *Corbin* there was no evidence connecting the defendants with past or future plans to distribute drugs or with a larger, ongoing enterprise involving drug distribution. *Id.* at 1073 & n. 16. However, in the present case, there was evidence of past and future plans for the distribution of drugs and of an ongoing enterprise involving the distribution of drugs. The evidence is sufficient to establish that the conspiracy charged was not just an isolated incident and was instead a continuous course of conduct. *See Rewis v. United States*, 401 U.S. 808,

---

**3.** 18 U.S.C. § 1952 provides in part:

  (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

  (1) distribute the proceeds of any unlawful activity; or

  (2) commit any crime of violence to further any unlawful activity; or

  (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, manage-

ment, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

  (b) As used in this section "unlawful activity" means (1) any business enterprise involving ... narcotics ....

811, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971) (one instance of activity); *cf. United States v. Bergdoll,* 412 F.Supp. 1308, 1318 (D.Del.1976) (single criminal effort part of "continuing criminal enterprise").

*Coconspirator's Statements*

■ All appellants argue that the district court improperly admitted the government's tape recording of a conversation between Streeter and Merchant under Fed. R.Evid. 801(d)(2)(E), the coconspirator's exception. During the conversation, Merchant described the various duties and responsibilities of each appellant in the smuggling operation and other particulars about their operation. The government contends Merchant related these particulars to convince Streeter that the group was reliable and experienced in order to insure his continued participation. Appellants argue that Streeter was already committed and had given assurances to that effect. Appellants characterize Merchant's statements as mere puffing, joking or a sharing of general experience. They argue that the statements were not made in furtherance of the conspiracy because Merchant's statements did not serve the objectives of the conspiracy.

The requirement that out-of-court statements further the conspiracy to be admissible is afforded a broad construction. *United States v. Bentley,* 706 F.2d 1498, 1506 (8th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). *See, e.g., United States v. Harris,* 546 F.2d 234, 237–38 (8th Cir.1976); *United States v. James,* 510 F.2d 546, 549 (5th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). Merchant, of course, had no idea that Streeter was working with the FBI. Merchant still needed Streeter's cooperation in order to lease the King Air in someone else's name. This circuit upheld the admissibility of statements made by one coconspirator to a government undercover agent which were designed to allay apprehension and to insure good relations for possible future sales in *United States v. Overshon,* 494 F.2d 894, 899 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96,

42 L.Ed.2d 85 (1974). We hold that the statement was made in furtherance of the conspiracy and was therefore properly admitted as a coconspirator's statement.

■ Krevsky also argues that there was insufficient independent proof of his participation in the conspiracy to admit statements by other alleged coconspirators. This circuit applies a "preponderance of the evidence" standard of proof. "The independent evidence of illicit association may be completely circumstantial, or may consist of the conspirator's own conduct and admissions." *United States v. Bentley,* 706 F.2d at 1506 (citations omitted). In the present case there was the independent evidence showing (1) Krevsky flew to Des Moines, under an assumed name; (2) Krevsky carried the rest of the money needed to lease the aircraft; (3) toll call records for a telephone number used by Merchant and Krevsky in making calls to and from Streeter; (4) Merchant's briefcase contained the telephone numers used by Merchant to contact Krevsky from Des Moines; (5) papers found on Krevsky listed the telephone numbers Merchant used to contact him; (6) Krevsky had made previous trips to Colombia; (7) Krevsky was acquainted with "Carlos," the group's supplier; and (8) Krevsky made inculpatory statements in the bar which were overheard by a local law enforcement officer shortly before his arrest. This independent evidence was sufficient to support the district court's conclusion that it was more likely than not that a conspiracy existed and that the declarants and Krevsky were parties.

*Sufficiency of the Evidence*

■ Bonilla argues that there is insufficient evidence to convict on the conspiracy counts. A jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Burchinal,* 657 F.2d at 991. We have examined the record and conclude

there was sufficient evidence to support the verdicts.

*Sentencing*

Krevsky argues the district court abused its discretion in refusing to sentence him under the provisions of the Young Adult Offenders Act, 18 U.S.C. § 4216. The district court specifically found that Krevsky would not benefit from sentencing under the Act. We have carefully reviewed the sentencing proceedings and find no abuse of discretion.

Accordingly, the judgments of the district court are affirmed.