Simon Curtis TUNSTALL, Petitioner,

v.

Frank HOPKINS, NSP Warden, Herbert Maschner, ISP Warden, Respondents.

No. C97–4069.

United States District Court, N.D. Iowa, Western Division.

Dec. 27, 2000.

MEMORANDUM OPINION AND OR-
DER REGARDING MAGISTRATE
JUDGE'S REPORT AND RECOM-
MENDATION ON PETITION FOR
WRIT OF HABEAS CORPUS

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................... 1198
 A. *Factual and Procedural Background* ................................. 1198
 B. *Tunstall's Habeas Corpus Petition* ................................ 1199
 C. *Judge Zoss's Report and Recommendation* ........................... 1199

II. *LEGAL ANALYSIS* .................................................... 1200
 A. *Standard of Review* ............................................. 1200
 B. *The Requirements of § 2254(d)(1)* ................................ 1200
 1. *"Clearly established federal law as determined by the Supreme*
 *Court of the United States"* ..................................... 1202
 2. *Application of the law to Tunstall's claim* ....................... 1204

III. *CONCLUSION* ....................................................... 1207

Thomas Jefferson wrote, "Were it left to me to decide whether we should have a government without newspapers, or newspapers without a government, I should not hesitate a moment to prefer the latter." Letter from Jefferson to Col. Edward Carrington, January 16, 1787.[1] In a twist on Jefferson's observation, this court must decide what happens when newspapers and government collide in the course of a state criminal trial. Specifically, in this federal *habeas corpus* action, petitioner Simon Curtis Tunstall contends that his Sixth Amendment right to trial by an impartial jury on state charges of first-degree murder and burglary was compromised when a juror viewed a prejudicial newspaper article about his trial in the jury room in the middle of trial.

## I. INTRODUCTION

This matter is before the court pursuant to petitioner Simon Curtis Tunstall's (hereinafter "Tunstall") petition for a writ of *habeas corpus*, filed pursuant to 28 U.S.C. § 2254. In his petition, Tunstall challenges his February 18, 1987, conviction for first-degree murder and first-degree burglary in the Iowa District Court for Woodbury County. Tunstall contends, *inter alia*, that the trial court erred in failing to meet its constitutional obligation to voir dire the jurors concerning a newspaper article published during trial that contained allegedly prejudicial information about Tunstall, which in turn deprived him of due process and his right to a fair and impartial jury.

### A. Factual and Procedural Background

On August 31, 1986, defendants Tunstall, Steven Frasier, and James Simpson were each charged with murder and burglary stemming from the shooting death of Jeffrey Jones in Sioux City, Iowa.[2] Each defendant pled not guilty and proceeded to a joint trial in the Iowa District Court for Woodbury County. On the second day of trial, attorney Duane Hoffmeyer, who represented Tunstall's co-defendant James Simpson, informed the trial court that he had seen a juror reading THE SIOUX CITY JOURNAL, which contained an article about the trial, in the jury room. Hoffmeyer moved for a mistrial on the basis that the newspaper article contained information that was unduly prejudicial, and information that the trial court had ruled inadmissible. In addition to moving for a severance and change of venue, Tunstall joined in the motion for mistrial, arguing that the article inaccurately portrayed him as a pimp, and inaccurately stated that he had hit the victim with a piece of furniture and that he was a cousin of the two other co-defendants. Co-defendant Frasier also joined in the motions for mistrial, severance, and change of venue. The trial court denied all of the defendants' motions. On February 18, 1987, a jury found Tunstall guilty of first-degree murder and first-degree burglary, co-defendant Frasier guilty of first-degree murder and first-degree burglary, and co-defendant Simpson guilty of second-degree burglary. On March 30, 1987, the trial court denied Tunstall's post-trial motions and sentenced him to life imprisonment on the murder conviction and a term not to exceed twenty-five years on the burglary conviction, with the sentences to be served concurrently. On direct appeal, the Iowa Court of Appeals affirmed Tunstall's conviction, and the Iowa Supreme Court later denied further review. *State v. Tunstall*, 442 N.W.2d 280 (Iowa App.1989); *State v. Tunstall*, No. 87–501 (Iowa, March 31, 1989). Tunstall is currently in the custody of the Iowa Department of Corrections at the penitentiary in Fort Madison, Iowa. He is serving a life sentence.

---

1. *See* THE WRITINGS OF THOMAS JEFFERSON (MEMORIAL EDITION) Vol. 12, p. 345 (Andrew Lipscomb and Albert Bergh, eds., Thomas Jefferson Memorial Association, Washington, D.C., 1903–04).

2. *See* Magistrate Judge Zoss's Report and Recommendation for the comprehensive factual and procedural background in this case.

### B. Tunstall's Habeas Corpus Petition

On August 1, 1997, Tunstall filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. In his original and amended petition,[3] Tunstall asserted myriad issues for consideration, including:

1. The trial court erred in failing to voir dire the jury panel to determine whether any of the jurors had read a newspaper article concerning Tunstall's case;

2. Tunstall's trial counsel was ineffective in failing to request voir dire of the jury panel to ascertain if the jurors read the newspaper article concerning Tunstall's case;

3. The trial court erred in allowing police officer Kelvin Smith to testify as to statements made by Dennis Jackson;

4. The trial court erred in denying codefendant Frasier an opportunity to testify about the violent and aggressive acts of the victim;

5. The trial court erred in limiting the cross-examination of Christine Buddi; and

6. The trial court erred in allowing the prosecution to question co-defendant Simpson about previously suppressed evidence.

Additionally, Tunstall asserted other issues in his brief and supplemental brief, including:

7. Ineffective assistance of counsel for failure to introduce the deposition of Dennis Jackson;

8. Ineffective assistance of counsel for failure to move for a mistrial after the state amended the charges and excluded a theory of premeditation;

9. The trial court erred in admitting a knife into evidence;

10. The trial court erred in improperly instructing the jury; and

11. The trial court erred when it denied Tunstall's motion in arrest of judgment, or, in the alternative, motion for new trial.

### C. Judge Zoss's Report and Recommendation

On October 10, 1997, this case was referred to United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the petition. On September 5, 2000, Judge Zoss filed a thorough, comprehensive, and well-written Report and Recommendation in which he recommends that Tunstall's petition for writ of *habeas corpus* be granted, and that the matter be remanded for a new trial. Judge Zoss concluded that the Iowa appellate court's decision affirming the trial court's failure to voir dire the jurors about the newspaper was contrary to clearly established federal law as determined by the Supreme Court of the United States and interpreted by the federal district courts in the exercise of their power under Article III of the Constitution. Specifically, Judge Zoss concluded that the trial court erred in failing, first, to make a determination of whether the newspaper article was potentially prejudicial to Tunstall; second, if so, to voir dire the jurors to determine if any of them had seen or read the article in question; and third, if so, to ascertain the degree of any prejudice to the defendant arising therefrom and take appropriate action, including declaring a mistrial if appropriate, to protect Tunstall's rights. *See* Report and Recommendation at 34. Finding this claim to be dispositive, Judge Zoss did not consider the remaining issues asserted by Tunstall in his petition.

On September 18, 2000, respondents filed objections to Judge Zoss's Report and Recommendation. Respondents object to Judge Zoss's analysis and resulting conclusion as to what constitutes clearly established federal law, as determined by the Supreme Court, in the context of a state trial court's duty to protect a criminal defendant from potentially prejudicial midtrial publicity. Specifically, respondents

---

**3.** On February 27, 1998, Tunstall filed an amended petition, eliminating defendant Warden Thomas Hundley and adding defendant Herbert Maschner.

object to that portion of the Report and Recommendation where Judge Zoss formulates a standard of review applicable to Tunstall's appeal from a state court conviction (28 U.S.C. § 2254) based on the standard of review formulated by federal circuit courts reviewing appeals from federal court convictions (28 U.S.C. § 2255). Accordingly, respondents argue that because the standard of review formulated by Judge Zoss is inapplicable here, it is not a proper basis upon which to grant Tunstall relief.

On October 24, 2000, the court held a hearing on respondents' Objections to the Magistrate Judge's Report and Recommendation. Respondents were represented by Sharon K. Hall, Assistant Attorney General, Des Moines, Iowa. Petitioner Tunstall, who heard the argument via telephone, was represented by Stanley E. Munger and Jay E. Denne of Munger, Reinschmidt & Denne, Sioux City, Iowa.

## II. LEGAL ANALYSIS

### A. Standard of Review

 The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a de novo review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107

(1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Because objections have been filed in this case, the court must conduct a *de novo* review of those portions of the Report and Recommendation to which respondents object.

### B. The Requirements of § 2254(d)(1)

Section 2254(d)(1) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1) (emphasis added). As the United States Supreme Court explained in *Williams*, "[F]or [a petitioner] to obtain federal habeas relief, he must first demonstrate that his case satisfies the condition set by § 2254(d)(1)." *See Williams v. Taylor*, 529 U.S. 362, 402–03, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000).[4]

In *Williams*, the Supreme Court addressed the question of precisely what the "condition set by § 2254(d)(1)" requires. *See id.* at 374–391, 120 S.Ct. at 1503–1511 (Part II of the minority decision); *id.* at

---

4. In a separate provision, the statute also provides for *habeas* relief when a state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). That provision was not at issue in *Williams*, nor have the parties asserted that it is pertinent here.

401–13, 120 S.Ct. at 1518–23 (Part II of the majority decision).[5] In the portion of the majority decision on this point, the majority summarized its conclusions as follows:

[Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied*—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Under the "contrary to" clause,* a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. *Under the "unreasonable application" clause,* a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 413, 120 S.Ct. at 1523 (emphasis added); *see also Whitmore v. Kemna,* 213 F.3d 431, 433 (8th Cir.2000) ("It seems to us that § 2254(d) as amended by the AEDPA is unambiguous as to the scope of federal court review, limiting such review (at least as compared with past practice) in order to effect the intent of Congress to expedite habeas proceedings with appropriate deference to state court determinations. *See Williams v. Taylor,* 529 U.S. 362, 402–03, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000) (noting purposes of AEDPA amendments).").

The Court also clarified two other important definitions. First, the Court concluded that "unreasonable application" of federal law under § 2254(d)(1) cannot be defined in terms of unanimity of "reasonable jurists"; instead, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410, 120 S.Ct. at 1522. Consequently, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* Second, the Court clarified that "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision," and "the source of clearly established law [is restricted] to this Court's jurisprudence." *Id.* at 1523.

This court, therefore, must determine whether there is clearly established federal law, as determined by the Supreme Court, that governs Tunstall's claim that the trial court erred in failing to meet its constitutional obligation to *sua sponte* voir dire the jurors concerning a newspaper article published mid-trial[6] to determine

---

5. In *Williams,* the opinion of Justice Stevens obtained a 6–3 majority, except as to Part II, which is the pertinent part of the decision here. *See Williams,* 529 U.S. at ——, 120 S.Ct. at 1499. Justice O'Connor delivered the opinion of the Court as to Part II, in which she was joined by Chief Justice Rehnquist and Justices Kennedy, Thomas, and Scalia, thereby obtaining a 5–4 majority on this portion of the decision. *See id.*

6. In the Report and Recommendation, Judge Zoss concluded: "The Court has not set down many guidelines for resolving the problem of midtrial publicity. Nevertheless, although not decided upon a set of materially indistinguishable facts, the pretrial publicity cases do break sufficient legal ground to establish the constitutional principles upon which Tunstall's claim is based." Report and Recommendation at 16–17 (quotations and citations omitted). The only Supreme Court cases that

what exposure, if any, jury members had to the article in order to safeguard Tunstall's due process right to a fair and impartial jury.

### 1. "Clearly established federal law as determined by the Supreme Court of the United States"

The Due Process Clause of the Fourteenth Amendment guarantees the Sixth Amendment right of jury trial in state criminal convictions. *See Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). This right includes the right to trial by an impartial jury. *See, e.g., Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Moreover, it is well established that a state prisoner's claim that he was denied the right to a trial by an impartial jury may be considered by a federal court on habeas review. *Id.* However, there is a significant distinction between the standard that is applied when considering a claim raised by a state prisoner contending that he was denied the right to a trial by an impartial jury and the standard that is applied when considering the same claim raised by a federal prisoner. *Haney v. Rose*, 642 F.2d 1055, 1058 (6th Cir.1981); *accord DeLisle v. Rivers*, 161 F.3d 370, 388 (6th Cir.1998); *Williams v. Griswald*, 743 F.2d 1533, 1537–38 (11th Cir.1984); *see Gall v. Parker*, 231 F.3d 265, 308 (6th Cir.2000) (explaining that the standard required when a habeas petitioner is attacking a state court conviction is more demanding and that

federal courts will not presume unfairness of constitutional magnitude in the absence of particularly egregious circumstances) (internal quotation omitted). Specifically, federal prisoners challenging their federal court convictions benefit from the presumption principle established in *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

In *Marshall*, the defendant was convicted of dispensing certain drugs without a prescription in federal court. During the trial, seven of the jurors were exposed to various news accounts relating that the defendant had previously been convicted of forgery, that he and his wife had been arrested for other narcotics offenses, and that he had for some time practiced medicine without a license. However, after interviewing the jurors, the trial judge denied a motion for a mistrial, because of the jurors' assurances that they could be impartial, notwithstanding their exposure to the news articles. The Supreme Court disagreed with the trial judge, and reversed the defendant's conviction, because the jurors had been exposed to information with a high potential for prejudice. *Marshall*, 360 U.S. at 312–313, 79 S.Ct. 1171. It did so, however, expressly "(i)n the exercise of (its) supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts," *Marshall*, 360 U.S. at 313, 79 S.Ct. 1171, and "not as a matter of constitutional compulsion." *Murphy v. Florida*,

involve midtrial publicity are *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

In Tunstall's case, midtrial publicity is at issue. Thus, this court adopts Judge Zoss's conclusion that the pretrial publicity cases break sufficient legal ground to establish the constitutional principles upon which Tunstall's claim is based, however, this court rejects Judge Zoss's conclusion that in this *habeas corpus* action midtrial publicity requires application of a stricter standard than pretrial publicity, for which Judge Zoss cites several federal circuit court decisions that support such a heightened standard. This is so be-

cause the Supreme Court in *Sheppard or Marshall* never determined that midtrial publicity engenders a stricter standard than the pretrial publicity standard. Given the newfound constraints of *Williams v. Taylor*, therefore, this court will only apply the standard determined by Supreme Court cases dealing with predominantly pretrial publicity. *See Williams*, 529 U.S. at 413, 120 S.Ct. at 1523 (clarifying that "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision," and "the source of clearly established law [is restricted] to this Court's jurisprudence.").

421 U.S. 794, 797, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Indeed, the *Murphy* court stated: "In the face of so clear a statement, it cannot be maintained that *Marshall* was a constitutional ruling now applicable, through the Fourteenth Amendment, to the States." *Murphy,* 421 U.S. at 798, 95 S.Ct. 2031. Echoing this tenet, the Seventh Circuit Court of Appeals stated "nothing in the Constitution compels the trial courts of all fifty states to adopt the presumption [articulated in *Marshall*], as its promulgation was based on the Court's federal supervisory authority." *Britz v. Thieret,* 940 F.2d 226, 231 (7th Cir.1991) (citing *Murphy* ); *see Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 2333, 147 L.Ed.2d 405 (2000) ("With respect to proceedings in state courts, our authority is limited to enforcing the commands of the United States Constitution.") (internal quotation omitted); *Harris v. Rivera,* 454 U.S. 339, 344–345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (per curiam) ("Federal judges have no general supervisory power over state trial judges; they may not require the observance of any special procedures except when necessary to assure compliance with the dictates of the Federal Constitution."); *cf. Mu'Min v. Virginia,* 500 U.S. 415, 111 S.Ct. 1899, 1903–04, 114 L.Ed.2d 493 (1991) ("We enjoy more latitude in setting standards for voir dire in federal courts under our supervisory power than we have in interpreting the provisions of the Fourteenth Amendment with respect to voir dire in state courts.").

The Supreme Court did, however, declare that prejudice may be presumed regardless of whether a conviction is obtained in federal or state court, when pretrial publicity is so pervasive, inflammatory and widespread that the trial becomes "but a hollow formality," or when pre-trial and mid-trial publicity is so invasive that the setting of the trial becomes inherently prejudicial. *Murphy,* 421 U.S. at 803, 95 S.Ct. 2031; *see Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In *Murphy,* the Supreme Court discussed the circumstances in state trials where prejudice was presumed, emphasizing that the news media and print, in *Rideau, Estes,* and *Sheppard,* either in the community at large or in the courtroom itself, pervaded and disrupted the proceedings to such an extent that each of the petitioners' constitutional rights to due process and a fair and impartial jury had been violated. *Murphy,* 421 U.S. at 798–800, 95 S.Ct. 2031. An examination of the circumstances under which the Supreme Court, in these cases, presumed prejudice of a constitutional magnitude is instructive.

In *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), the defendant had 'confessed' under police interrogation to the murder of which he stood convicted. A 20–minute film of his confession was broadcast three times by a television station to tens of thousands of people in the parish where the trial was to take place two weeks before the arraignment and two months before the trial. *Rideau,* 373 U.S. at 724, 83 S.Ct. 1417. In reversing the trial judge, the Supreme Court, without even perusing a transcript of the voir dire examination for evidence of actual prejudice, found that the "real trial" had already occurred when the 150,000 people in the parish had seen and heard the defendant admit his guilt on camera and that "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." *Id.* at 726, 83 S.Ct. 1417. In so doing, the Supreme Court concluded that under these set of "kangaroo court proceedings," the petitioner's due process rights were violated. *Id.* at 727, 83 S.Ct. 1417.

In *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), the question presented to the Supreme Court was whether the petitioner, who was convicted of swindling in state court, was deprived of

his right under the Fourteenth Amendment to due process by the televising and broadcasting of his trial. During the trial, the trial judge permitted the press to sit within the bar of the court and to overrun it with television equipment. For example, at least twelve cameramen were engaged in the courtroom throughout the hearing taking motion and still pictures and televising the proceedings. Cables and wires were snaked across the courtroom floor, three microphones were on the judge's bench and others were beamed at the jury box and the counsel table. The pervasiveness of the media which led to considerable disruption during the trial, coupled with the observation that the defendant's trial was conducted in a circus atmosphere, *see Murphy,* 421 U.S. at 799, 95 S.Ct. 2031 (stating that the trial in *Estes* had been conducted in a circus atmosphere), the Supreme Court in *Estes* held that it inherently lacked due process. *Estes,* 381 U.S. at 545–52, 85 S.Ct. 1628. Specifically, the Supreme Court stated:

> It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process.

*Id.* at 542–43, 85 S.Ct. 1628.

Similarly, *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) involved a trial that was infected by a background of massive, pervasive, prejudicial and extremely inflammatory publicity, as well as by a courthouse given over to accommodate the public appetite for carnival. In reversing, the Supreme Court held that the failure of a state trial judge in a murder prosecution to protect the defendant from inherently prejudicial pre-trial publicity, which saturated the community, deprived the defendant of a fair trial con-

sistent with due process. *Sheppard,* 384 U.S. at 363, 86 S.Ct. 1507.

■ As the case-law demonstrates, the presumed prejudice criterion has been applied in two types of cases. First, prejudice is presumed under certain circumstances in federal criminal convictions. *See Marshall,* 360 U.S. at 313, 79 S.Ct. 1171. In these circumstances, the presumption is based solely on the supervisory power of the federal courts to formulate standards for the enforcement of the federal criminal law. *Id.* Second, irrespective of whether the conviction was obtained in federal or state court, prejudice may be presumed in certain egregious pre-trial/mid-trial and "media circus" situations. *See, e.g., Sheppard; Rideau; Estes; see also Pruett v. Norris,* 153 F.3d 579, 585 (8th Cir.1998) (quoting *Dobbert v. Florida,* 432 U.S. 282, 303, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)) ("A petitioner may attempt to prove that pretrial publicity was so extensive and corrupting that a reviewing court is required to 'presume fairness of a constitutional magnitude.'"). The Supreme Court has cautioned, however, that those cases in which "pretrial publicity presents [an] unmanageable threat[ ]" to a defendant's right to an impartial jury trial are "relatively rare ." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

**2. Application of the law to Tunstall's claim**

Initially, a brief recitation of the factual circumstances surrounding Tunstall's claim is beneficial here. The article in question appeared on the front page of THE SIOUX CITY JOURNAL on the second day of Tunstall's trial.[7] There were two trials going on at the county courthouse on the day the article was published. During a recess from the trial, Duane Hoffmeyer, an attorney who represented one of Tun-

---

**7.** A detailed account of this article is in Judge Zoss's Report and Recommendation at pages 6–8.

stall's co-defendants, James Simpson, walked by the jury room, which was adjacent to the courtroom in which Tunstall's trial was taking place, and saw a copy of THE SIOUX CITY JOURNAL in the jury room. When the court reconvened, Hoffmeyer informed the court that he had seen "a juror reading that paper, and that some of those jurors were members of this particular jury." (Tr. Tran., p. 224). Hoffmeyer, however, was unable to state whether the juror reading the paper was one of the jurors from Tunstall's trial, and he was also unable to state whether the juror was reading the edition of the paper that contained the article about Tunstall's trial. In fact, the edition of the newspaper that was admitted into evidence at trial was Hoffmeyer's personal copy of the newspaper and not the actual newspaper that he observed in the jury room.

Moreover, prior to the publication of the article, the trial court admonished the jury two times not to consider media reports of the trial. During the court's jury orientation, the trial court read the following preliminary instruction, *inter alia*, to the prospective jurors in the case:

> If you are selected as a juror, it will be your duty not to consider anything outside of the evidence in the case. For example, you must not make any independent investigation of the facts or independently research the law. You must not give any consideration to what you may hear about the case in the news media or elsewhere. Your decision must be based solely on the evidence presented to you in the trial of the case and the Court's instructions. That will be your sworn duty if you are selected as a juror.

(Doc. 38, Ex. 2, "Jury Orientation—Criminal Case," at 650–1605). Before dismissing the jury at the end of the first day of

trial, the trial court instructed the jury, *inter alia*, that it was:

> [C]onceivable that there could be some mention of this case somewhere in the paper or on TV or something like that. And if there is, remember what I told you about that. Don't pay any attention to it, whatever you -anyone else might say about this case. You folks know far more about what's happened than anyone else could possible know[.]

(Tr. Tran., p. 195).

█ The court finds that the admonition that the trial court delivered to the jurors regarding publicity in this case was ambiguous, and could have been clearer.[8] For example, at a minimum, the trial court could have instructed the jurors not to read any news stories or articles about the case, or listen to any radio or television reports about the case. However, because the trial court did tell the jurors "[d]on't pay any attention to it . . . .," the court will not presume that the jurors in Tunstall's trial violated this admonition, albeit ambiguous, absent proof. *See Jones v. United States*, 527 U.S. 373, 393, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (stating that the jurors are presumed to have followed the district court's instructions) (citations omitted); *see also Delli Paoli v. United States*, 352 U.S. 232, 242, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) ("Our jury system is based upon the assumption that juries will endeavor to follow the Court's instructions"); *United States v. Paul*, 217 F.3d 989, 997 (8th Cir.2000) (stating jury is presumed to follow all instructions) (citing *Jones*).

█ In this case, Tunstall's appeal involves a state conviction and mid-trial publicity. No contention has been made that his case falls within the rubric of the second category of cases in which prejudice is

---

8. For example, this court, in its Preliminary Instructions to the Jury, instructs the jury as follows:

> Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it. In fact, until the trial is over I suggest that you avoid reading any newspapers or news journals at all, and avoid listening to any TV or radio newscasts at all.

presumed—that is, Tunstall does not claim that the mid-trial publicity during his trial was so massive, inflammatory, widespread and pervasive that prejudice ought to have been presumed. Even if Tunstall did set forth such a contention, this court would reject it because his trial lacks the inflammatory, widespread and pervasive publicity characteristic in trials, as outlined above, in which the setting of the trial was determined to be inherently prejudicial, thus warranting a presumption of prejudice. Rather, Tunstall's argument is predicated on the presumed prejudice standard articulated in *Marshall*, which, as indicated above, is inapplicable to Tunstall's claim because he is a state prisoner challenging his state conviction. Thus, the result of the decision of the Iowa Court of Appeals to affirm Tunstall's conviction was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, because the Supreme Court precedent on the rule sought by Tunstall is not applicable in his case. It is for this reason that the court rejects Judge Zoss's Report and Recommendation.

Indeed, in the Report and Recommendation, Judge Zoss concluded that Tunstall's constitutional rights to due process of law and to trial by a fair and impartial jury were violated due to the trial court's failure to take appropriate action—that is, first, to make a determination of whether the newspaper article was potentially prejudicial to Tunstall; second, if so, to voir dire the jurors to determine if any of them had seen or read the article in question;

and third, if so, to ascertain the degree of prejudice to the defendant arising therefrom and take appropriate action, including declaring a mistrial if appropriate, to protect Tunstall's rights. *See* Report and Recommendation at 34. In arriving at this conclusion, however, this court notes that Judge Zoss relied exclusively on the standards formulated by federal circuit courts reviewing *habeas corpus* petitions arising from federal convictions.[9] Significantly, all but two of these cases involve federal prisoners seeking *habeas corpus* relief from their federal convictions pursuant to 28 U.S.C. § 2255. Consequently, these federal courts were not constrained to finding a violation of a constitutional magnitude to grant the petitioner relief; rather, these federal courts, pursuant to its "supervisory power," were permitted "to formulate and apply proper standards for enforcement of the criminal law in federal court." *See Marshall.* Furthermore, in the wake of *Williams*, this court is prevented from looking to lower federal court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir.2000) (explaining that the *Williams* decision prevents the district court from looking to lower federal court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law). In so doing, this court rejects the standard for reviewing Tunstall's

9. *See, e.g., United States v. Hood*, 593 F.2d 293 (8th Cir.1979); *United States v. Krevsky*, 741 F.2d 1090 (8th Cir.1984); *United States v. Dixon*, 913 F.2d 1305 (8th Cir.1990); *United States v. Conners*, 894 F.2d 987 (8th Cir.1990); *United States v. Jones*, 542 F.2d 186 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375, 376 (1976); *United States v. Pomponio*, 517 F.2d 460 (4th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975); *United States v. Kaplan*, 510 F.2d 606 (2nd Cir.1974); *United States v. Burke*, 506 F.2d 1165 (9th Cir.1974); *Margoles v. United States*, 407 F.2d 727 (7th Cir.1969); *United States v. Aragon*, 962 F.2d 439 (5th

Cir.1992); *United States v. Bermea*, 30 F.3d 1539 (5th Cir.1994); *United States v. Chagra*, 669 F.2d 241 (5th Cir.1982); *United States v. Williams*, 568 F.2d 464 (5th Cir.1978). *But see Goins v. McKeen*, 605 F.2d 947 (6th Cir. 1979) (finding that the circumstances of a state prisoner's conviction was so inherently prejudicial that a violation of his constitutional right to trial by an impartial jury could be presumed) and *U.S. ex rel. Greene v. State of N.J.*, 519 F.2d 1356 (3d Cir.1975) (finding that in light of the widespread dissemination of prejudicial information prejudice could be presumed).

claim formulated by Judge Zoss in the Report and Recommendation.

█ The court, however, would not hesitate to grant Tunstall relief under its supervisory power to formulate standards for the enforcement of the federal criminal law in federal court had Tunstall been convicted in federal court and had this *habeas corpus* action been brought pursuant to 28 U.S.C. § 2255 instead of 28 U.S.C. § 2254. Indeed, the court would accept and adopt the standard articulated by Judge Zoss in the Report and Recommendation. However, the court is not presented with a 28 U.S.C. § 2255 action; rather it is presented with a 28 U.S.C. § 2254 action and, therefore, the court must find a violation of a constitutional magnitude in order grant Tunstall relief, notwithstanding this court's disapproval of the trial court's inaction. The following excerpt from a decision by the Sixth Circuit Court of Appeals in *De-Lisle v. Rivers*, 161 F.3d 370, 388 (6th Cir.1998) is especially apropos:

> We note, in closing, that this court does not, in this habeas case, exercise the sort of supervisory power over the Michigan courts that led the Supreme Court in *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) to reverse a federal-court conviction when, during trial, the jury was exposed to two newspaper articles containing prejudicial information that had been excluded from evidence. We have no power here "to intervene to protect the integrity of the [state court] system," *Frazier v. Heebe*, 482 U.S. 641, 647 n. 7, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987); we are instead "limited to enforcing the commands of the United States Constitution," *Mu'Min v. Virginia*, 500 U.S. 415, 422, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). We must not be so distracted by preoccupying personal outrage toward the conduct of the state courts that we ignore our limited constitutional mandate."

*DeLisle*, 161 F.3d at 388.

### III. CONCLUSION

Therefore, because there is no clearly established federal law, as determined by the Supreme Court, that governs Tunstall's claim for *habeas corpus* relief, this court **sustains** respondents objections to Judge Zoss's Report and Recommendation, and **rejects** Judge Zoss's Report and Recommendation. Accordingly, Tunstall's petition for writ of *habeas corpus* predicated on this claim is **denied.** However, because Judge Zoss did not consider the remaining claims asserted by Tunstall in his petition for writ of *habeas corpus*, this court refers the matter back to Judge Zoss for a supplemental Report and Recommendation on Tunstall's remaining claims.

**IT IS SO ORDERED.**