Simon Curtis TUNSTALL, Petitioner,

v.

Frank HOPKINS, NSP Warden, Herbert Maschner, ISP Warden, Respondents.

No. C97–4069MWB.

United States District Court, N.D. Iowa, Western Division.

June 21, 2001.

Stanley E. Munger, Jay E. Denne, Munger, Reinschmidt & Denne, Sioux City, IA, for petitioner.

Sharon K. Hall, Attorney General, Des Moines, LA, for respondents.

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S SUPPLEMENTAL REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS**

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1051

II. LEGAL ANALYSIS ............................................. 1052
   A. Standard Of Review ...................................... 1052

B.  The Requirements of § 2254(d)(1) .....................................1052
C.  Ineffective Assistance of Counsel Claims ...........................1053
    1.  Counsel's failure to request voir dire of the jury panel ...............1055
    2.  Counsel's failure to introduce Dennis Jackson's deposition ...........1057
    3.  Counsel's failure to move for a mistrial ...........................1064
D.  Assertions of Trial Court Error .....................................1065
    1.  Allowance of hearsay testimony ...................................1065
    2.  Other assertions of trial court error .............................1066
E.  Certificate of Appealability .......................................1067

III. CONCLUSION .............................................................1068

## I.  INTRODUCTION

In his *habeas corpus* petition, Simon Curtis Tunstall ("Tunstall") asserts myriad claims in an effort to obtain relief from his conviction for first-degree murder and first-degree burglary. Tunstall's petition was originally referred to Magistrate Judge Paul A. Zoss for the filing of a Report and Recommendation, which Judge Zoss filed on September 5, 2000. In that Report and Recommendation, Judge Zoss addressed only one of Tunstall's claims, which coincidentally happened to be the first claim asserted by Tunstall in his petition, because Judge Zoss found that claim to be dispositive. Specifically, Judge Zoss recommended that Tunstall receive a new trial, because the trial court failed to *voir dire* the jury panel to determine whether any jurors had read a prejudicial newspaper article mid-trial. This court, however, rejected Judge Zoss's September 5, 2000, Report and Recommendation, *see Tunstall v. Hopkins*, 126 F.Supp.2d 1196 (N.D.Iowa 2000), and referred the matter back to Judge Zoss for the filing of a Supplemental Report and Recommendation in order to consider the remaining claims asserted by Tunstall in his *habeas corpus* petition. Pursuant to this court's directive, Judge Zoss addressed all of the remaining claims Tunstall asserted in his *habeas corpus* petition in a March 21, 2001, Supplemental Report and Recommendation. Ultimately, Judge Zoss recommends that Tunstall be granted a new trial because his trial attorney was ineffective in failing to seek the introduction of an individual's deposition testimony, specifically Dennis Jackson, into evidence. Both Tunstall and respondents have filed objections to Judge Zoss's March 21, 2001, thorough and comprehensive Supplemental Report and Recommendation.

Because the factual and procedural background of this case are set forth in the original September 5, 2000, Report and Recommendation filed by Judge Zoss, such background will only be restated here as the court deems necessary in analyzing Tunstall's claims. As Judge Zoss noted in the Supplemental Report and Recommendation, Tunstall's remaining claims consist of the following:

2.  Tunstall's trial counsel was ineffective in failing to request voir dire of the jury panel to ascertain if the jurors read the newspaper article concerning Tunstall's case;

3.  The trial court erred in allowing police officer Kelvin Smith to testify as to statements made by Dennis Jackson;

4.  The trial court erred in denying co-defendant Frasier an opportunity to testify about the violent and aggressive acts of the victim;

5.  The trial court erred in limiting the cross-examination of Christine Buddi;

6.  The trial court erred in allowing the prosecution to question co-defendant Simpson about previously suppressed evidence.

7.  Ineffective assistance of counsel for failure to introduce the deposition of Dennis Jackson;

8. Ineffective assistance of counsel for failure to move for a mistrial after the state amended the charges and excluded a theory of premeditation;

9. The trial court erred in admitting a knife into evidence;

10. The trial court erred in improperly instructing the jury; and

11. The trial court erred when it denied Tunstall's motion in arrest of judgment, or, in the alternative, motion for new trial.

In considering these claims, Judge Zoss initially addressed Tunstall's claims 2, 7, and 8, outlined above, because they all concern ineffective assistance of counsel claims, and then proceeded to address the remaining claims *seriatim*. Accordingly, this court will evaluate Tunstall's claims in a like order.

## II. LEGAL ANALYSIS

### A. Standard Of Review

■ The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir.1994)); *Hudson*

*v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Because objections have been filed in this case, the court must conduct a *de novo* review of those portions of the Supplemental Report and Recommendation to which both Tunstall and respondents object.

### B. The Requirements of § 2254(d)(1)

Section 2254(d)(1) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was *contrary to,* or involved *an unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1) (emphasis added). As the United States Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)., "[F]or [a petitioner] to obtain federal habeas relief, he must first demonstrate that his case satisfies the condition set by § 2254(d)(1)." *Williams*, 529 U.S. at 403, 120 S.Ct. 1495.

In *Williams*, the Supreme Court addressed the question of precisely what the "condition set by § 2254(d)(1)" requires. *See id.* at 374–391, 120 S.Ct. 1495 (Part II of the minority decision); *id.* at 402–414, 120 S.Ct. 1495 (Part II of the majority

decision).[1] In the portion of the majority decision on this point, the majority summarized its conclusions as follows:

> [Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied* —the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." *Under the "contrary to" clause,* a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. *Under the "unreasonable application" clause,* a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 432–424, 120 S.Ct. 1495 (emphasis added); *see also Whitmore v. Kemna,* 213 F.3d 431, 433 (8th Cir.2000) ("It seems to us that § 2254(d) as amended by the AEDPA is unambiguous as to the scope of federal court review, limiting such review (at least as compared with past practice) in order to effect the intent of Congress to expedite habeas proceedings with appropriate deference to state court determinations. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495 (noting purposes of AEDPA amendments).").

The Court also clarified two other important definitions. First, the Court concluded that "unreasonable application" of federal law under § 2254(d)(1) cannot be defined in terms of unanimity of "reasonable jurists"; instead, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410, 120 S.Ct. 1495. Consequently, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* Second, the Court clarified that "clearly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision," and "the source of clearly established law [is restricted] to this Court's jurisprudence." *Id.* at 412, 120 S.Ct. 1495

## C. Ineffective Assistance of Counsel Claims

Here, Tunstall asserts three errors against his trial counsel, including (1) failing to request *voir dire* of the jury panel to ascertain if the jurors read the newspaper article concerning his case; (2) failing to introduce the deposition testimony of

---

1. In *Williams,* the opinion of Justice Stevens obtained a 6–3 majority, except as to Part II, which is the pertinent part of the decision here. *See Williams,* 529 U.S. at 367, 120 S.Ct. 1495. Justice O'Connor delivered the opinion of the Court as to Part II, in which she was joined by Chief Justice Rehnquist and Justices Kennedy, Thomas, and Scalia, thereby obtaining a 5–4 majority on this portion of the decision. *See id.*

Dennis Jackson; and (3) failing to move for a mistrial after the State amended the charges and excluded a theory of premeditation.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the Supplemental Report and Recommendation, Judge Zoss outlined the two-prong criteria employed in determining the effectiveness of counsel, which was enunciated by the United States Supreme Court in *Strickland.* To prevail on a claim of ineffective assistance of counsel, a *habeas* petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052; *Furnish v. United States of America,* 252 F.3d 950, 951 (8th Cir.2001) (stating that the two-prong test set forth in *Strickland* requires a showing that (1) counsel was constitutionally deficient in his or her performance and (2) the deficiency materially and adversely prejudiced the outcome of the case); *Garrett v. Dormire,* 237 F.3d 946, 950 (8th Cir.2001). Trial counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Indeed, "counsel must exercise reasonable diligence to produce exculpatory evidence[,] and strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.1991). However, there is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy. *Id.* at 689, 104 S.Ct. 2052; *Collins v. Dormire,* 240 F.3d 724, 727 (8th Cir.2001) (in determining whether counsel's performance was deficient, the court

should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....") (citing *Strickland* ); *Garrett v. Dormire,* 237 F.3d 946, 950 (8th Cir.2001) (stating that "[t]rial counsel's decision on the best way to deal with [witnesses] testimony was reasonable trial strategy"); *Ervin v. Delo,* 194 F.3d 908, 913 (8th Cir. 1999) (defense counsel's choice of means to impeach a witness was reasonable trial strategy), *cert. denied,* 530 U.S. 1267, 120 S.Ct. 2731, 147 L.Ed.2d 993 (2000) (citing *Gillette v. Tansy,* 17 F.3d 308, 311 (10th Cir.1994)); *Mills v. Armontrout,* 926 F.2d 773, 774 (8th Cir.1991) (decision not to attempt to impeach a prosecution witness was a strategic one); *Williams v. Armontrout,* 912 F.2d 924, 934 (8th Cir.1990) (en banc) ("Decisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.' "), *cert. denied,* 498 U.S. 1127, 111 S.Ct. 1092, 112 L.Ed.2d 1197 (1991) (internal citation omitted). With respect to the "strong presumption" afforded to counsel's performance, the Supreme Court specifically stated:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted).

To demonstrate that counsel's error was prejudicial, thereby satisfying the second prong of the *Strickland* test, a *habeas* petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The court will address each of Tunstall's three assertions of error upon which he bases his ineffective assistance of counsel claims, as well as Judge Zoss's conclusions with respect to those claims in turn.

### 1. Counsel's failure to request voir dire of the jury panel

Tunstall argues that he was deprived the effective assistance of counsel guaranteed to him by the Sixth Amendment by his attorney's failure to request *voir dire* of the jury panel after a newspaper containing a prejudicial article about Tunstall was observed in the jury lounge. To succeed on this claim, Tunstall must show that the Iowa courts unreasonably applied United States Supreme Court precedent regarding ineffective assistance of counsel claims. *See* 28 U.S.C. § 2254(d). In the Supplemental Report and Recommendation, Judge Zoss noted that the state courts correctly identified *Strickland* as the controlling legal principle, and concluded that "Tunstall's attorney's actions were well within the bounds of reasonable professional judgment contemplated by *Strickland.*" Supplemental Report and Recommendation at 9. In reaching this conclusion, Judge Zoss determined that Tunstall's attorney did not fail the performance prong of the *Strickland* test, and, consequently, Judge Zoss did not address the prejudice prong of the *Strickland* test with respect to this claim. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (explaining that it is not necessary to address both prongs, that is the performance and prejudice prongs, if the district court determines the petitioner has failed to meet one prong); *see also Bell v. Lockhart,* 2 F.3d 293, 299 (8th Cir.1993) (explaining that a defendant must meet both conditions to prevail on an ineffective assistance claim, and the court need not address both if one condition is insufficiently established).

Tunstall objects to Judge Zoss's conclusion, arguing that Judge Zoss erred first, in failing to find that Tunstall's attorney failed the performance prong of the *Strickland* test, and second, in failing to evaluate Tunstall's claim under the prejudice prong of the *Strickland* test. In support of his argument that he has established a *prima facie* case of ineffective assistance of counsel under *Strickland* with respect to this claim, Tunstall relies on a decision by the Third Circuit Court of Appeals, namely *Government of Virgin Islands v. Weatherwax,* 20 F.3d 572 (3rd Cir.1994). In that case, petitioner Weatherwax alleged that both his trial and appellate counsel failed to provide him with effective representation. The *Weatherwax* court directed its attention to Weatherwax's claim that trial counsel failed to request a *voir dire* to determine the impact on the jury when one of its members brought a newspaper article concerning Weatherwax's trial into the juryroom. Specifically, the *Weatherwax* court framed the issue as follows: "We must decide if trial counsel's failure to notify the court of this incident and to request a jury *voir dire* to determine if prejudice resulted equates to ineffective representation." *Weatherwax,* 20 F.3d at

574. The *Weatherwax* court explained that the record in that case did not reveal whether trial counsel made a deliberate strategic decision concerning the juror with the newspaper, and characterized trial counsel's conduct as a form of "inaction." *Id.* at 579. In vacating the denial of Weatherwax's *writ* and remanding the matter to the district court to conduct an evidentiary hearing, the *Weatherwax* court explained:

> ■ Given Weatherwax's allegations, supported by his affidavits and exhibits, the district court erred in not holding an evidentiary hearing to determine the truth of Weatherwax's assertions that a juror brought the newspaper into the juryroom and that counsel was informed that this situation had occurred. If true, Weatherwax has made out a prima facie case of ineffective assistance of counsel under the *Strickland* standard. The government must then be afforded the opportunity to question Weatherwax's counsel relative to his failure to request the voir dire in order to show, if applicable, that counsel proceeded on the basis of "sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

*Weatherwax,* 20 F.3d at 580.[2] Additionally, the *Weatherwax* court explained that in determining the reasonableness of the attorney's performance, the Supreme Court in *Strickland* noted that the American Bar Association Standards may be referred to as a guideline. *See Weatherwax,* 20 F.3d at 579. The section upon which the *Weatherwax* court focused its attention was the ABA Standard for Criminal Justice § 4–5.2 (3d ed.1993), "Control and Direction of the Case," which delineates those decisions that are ultimately to be made by the defendant, and those decisions that are ultimately to be made by the defense counsel. *Id.* Specifically, this section counsels that decisions that are strategic, such as which witnesses to call, whether to conduct cross-examination, and what trial motions to make belong to the attorney after consultation with the client. ABA Standard 4 – 5.2(b). The Commentary thereto states that when the attorney in question makes such strategic or tactical decisions, "[o]nly when [his] behavior revealed ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles [will these] actions amount to ineffective assistance of counsel." *Weatherwax,* 20 F.3d at 579 (citing Commentary at 4.67–68). Indeed, as the Supreme Court explained in *Strickland,* an attorney's judgment does not necessarily have to be right as long as it is reasonable. *See Strickland,* 466 U.S. at 687–91, 104 S.Ct. 2052. Here, Tunstall argues that there are no material differences between his case and Weatherwax's case in light of the fact that in his case, a juror had possession of a newspaper in the jury room, and that Mr. Wenell (now Judge Wenell), who was Tunstall's attorney, was informed of this fact, yet he failed to ask the trial court to poll the jury regarding the newspaper. Tunstall argues that the only way his rights could have been protected would have been if his attorney had asked to *voir dire* the jury panel, and because his attorney failed to do this, Tunstall argues that his conduct falls outside the range of reasonable professional assistance. Upon a

---

**2.** After the case was remanded to the district court, the district court granted Weatherwax relief on his ineffective assistance of counsel claim, because the court concluded that trial counsel did not employ sound trial strategy when he failed to request a *voir dire* of the jury. *See Weatherwax v. Government of Virgin Islands,* 1995 WL 55114, *7 (D.Virgin Islands Feb.6, 1995). On appeal, however, the Third Circuit Court of Appeals reversed the district court's decision and held that trial counsel's election not to request a mistrial did not constitute ineffective assistance of counsel, but instead was a reasonable tactical decision. *See Government of Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1431–32 (3d Cir.1996).

*de novo* review, however, the court does not agree that Tunstall's attorney's conduct falls outside of the "wide range of reasonable professional assistance" that is afforded to a counsel's performance under *Strickland.*

In the Supplemental Report and Recommendation, Judge Zoss observed that there was nothing in the record indicating that the reason for Tunstall's attorney's decision not to request to *voir dire* the jury panel was the result of trial strategy. Nevertheless, it is Tunstall who must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (internal quotations and citations omitted). Tunstall attempts to do this by way of analogy to the *Weatherwax* case. However, unlike the attorney's "inaction" in *Weatherwax,* in this case Tunstall's attorney did act. Consequently, this court is called upon to scrutinize what Tunstall's attorney did do as opposed to what he didn't do, and whether such performance was deficient under *Strickland.* Indeed, Tunstall's attorney did not fail to bring to the court's attention that a newspaper was observed in the juryroom during Tunstall's trial. In fact, Tunstall's attorney, along with two other defense attorneys who were representing codefendants Frasier and Simpson, opted to move for a mistrial in light of this information. The fact that all three attorneys moved for a mistrial based on the presence of the newspaper article in the juryroom, instead of seeking to *voir dire* the jury panel about the newspaper article, typifies the tactical and strategic decisions that attorneys make during trials. Indeed, the Post Conviction Relief ("PCR") court emphasized this point in considering Tunstall's claim, stating in pertinent part: "Counsel did move for a mistrial because of the newspaper article. Although it may have been better practice for trial counsel to voir dire the jurors,

counsel's choice not to do so, standing alone, is not sufficient proof of ineffective assistance of counsel." *See* PCR Ruling and Order at 4–6. Thus, while the court finds that the more prudent course of action for Tunstall's attorney would have been to ask to *voir dire* the jury about the newspaper article, Tunstall's attorney's decision to seek a mistrial, does not fall outside of the range of professional assistance set forth in *Strickland. Id.* 466 U.S. at 689, 104 S.Ct. 2052 (explaining that court's "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."); *see also Nix v. Whiteside,* 475 U.S. 157, 165, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) ("In *Strickland,* we acknowledged that the Sixth Amendment does not require any particular response by counsel to a problem that may arise. Rather, the Sixth Amendment inquiry is into whether the attorney's conduct was 'reasonably effective.' "). There being no deficiency in Tunstall's attorney's performance, therefore, the court need not consider if Tunstall was prejudiced. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (explaining that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). Because this court finds that the Iowa courts correctly identified *Strickland* as the controlling legal principle, and did not unreasonably apply the *Strickland* framework to the facts of this case, Tunstall's objections to Judge Zoss's findings in the Supplemental Report and Recommendation with respect to this claim are overruled.

### 2. Counsel's failure to introduce Dennis Jackson's deposition

Tunstall next argues that his attorney was ineffective in failing to introduce into

evidence the pretrial deposition of Dennis Jackson ("Jackson"), because Tunstall claims that Jackson's deposition testimony could have refuted the statements made by Officer Smith at trial. Specifically, Tunstall contends that his attorney was ineffective in failing to introduce Jackson's deposition for the purpose of rebutting the officer's testimony, and undermining the State's argument that Frasier and Tunstall were on a manhunt for Jones. The court finds that a brief recitation of the facts here would be beneficial.

Tunstall's convictions for first-degree murder and first-degree burglary arose out of an altercation, which resulted in the shooting death of Jeffrey Jones at an apartment in Sioux City on the afternoon of August 31, 1986. On direct appeal, the Iowa Court of Appeals found the following facts:

> Tunstall was a friend or acquaintance of Steven Frasier and James Simpson. Frasier and Jones were both pimps and had known each other for many years. Christine Buddi was a prostitute for Jones, and Kaylene Hopkins was a prostitute for Frasier. On August 31, 1986, Frasier, Buddi, and Hopkins went to a motel where they used cocaine and had sex. That afternoon Buddi returned to the apartment she shared with Jones. Tunstall attended church that morning and then went to dinner. Later he gave a ride to Frasier and Simpson. They stopped at a hotel, then went to Buddi's apartment to check on her. There Frasier, Tunstall, and Jones became involved in an altercation, and Jones received fatal gunshot wounds. Tunstall claims that he was present only during the fight and that he never touched Jones. Tunstall, Frasier, and Simpson were charged and tried together.

*State v. Tunstall*, No. 87-501, Slip op. at 2-3 (Iowa Ct.App. Jan.26, 1989). During the trial, Officer Smith testified· that on Sun-

day, August 31, 1986, he received a telephone call dispatching him to the Bel–Aire Motel to investigate a complaint. When he arrived, he proceeded to Room 36 where he met with an individual by the name of Dennis Jackson who came out of the room and appeared to the officer to be upset and excited. Officer Smith testified about statements that Jackson made to him. In his *habeas corpus* petition, Tunstall claims that Officer Smith's testimony was inconsistent with Jackson's pre-trial deposition testimony. Tunstall claims that this is significant, because when it came time for Jackson to be called as a witness at trial, the prosecution learned that Jackson intended to assert his Fifth Amendment right against self-incrimination. Specifically, Jackson asserted his Fifth Amendment right not to testify in response to some of the same questions he had been asked at his deposition, including any questions about his contacts with Frasier and Tunstall the night prior to the shooting, the day of the shooting, and Jackson further refused to confirm that he had spoken with Officer Smith. Thus, Tunstall argues that because Jackson's deposition testimony would have discredited Officer Smith's testimony, his attorney's failure to introduce the deposition into evidence for the purpose of casting doubt on the legitimacy of Officer Smith's testimony denied him his Sixth Amendment right of . confrontation.

In the Supplemental Report and Recommendation, Judge Zoss provides a very detailed account of precisely what transpired in the courtroom with regard to Jackson's testimony. In sum, the State moved to compel Jackson to respond to the questions. If that motion was denied, the State argued in the alternative that it wanted to introduce the portions of Jackson's testimony relating to his encounters with Frasier and Tunstall on the night prior to, and the day of, the shooting. In

fact, after Jackson invoked his Fifth Amendment right to remain silent (outside of the presence of the jury), Charles N. Thoman, on behalf of the State, sought to make the following offer of proof by way of Jackson's deposition testimony:

> I would offer to prove through Mr. Jackson's deposition that on Saturday evening, August 30, 1986, he did see defendant Frasier, defendant Tunstall, defendant Simpson and a Rochelle Gordon in an area known as Fourth Street here in Sioux City, at which time there was—I don't want to use the improper word—at which time there was a discussion between those four individuals and this witness.
>
> I would offer to prove that the following day, by virtue of his deposition, this witness was approached at his room at the Bel–Aire Motel by defendant Frasier, defendant Tunstall, that defendant Frasier was armed with a weapon at the time and that another discussion ensued, during which time defendant Frasier accused this witness of being a snitch and also asked where Jeffrey Jones was at of this witness.

Trial Transcript 1065–66. In response, all three defense attorneys, including Tunstall's attorney, vehemently resisted the State's requests to introduce Jackson's deposition testimony and to compel Jackson to testify. Tunstall's attorney opposed the introduction of Jackson's deposition testimony because he felt that such evidence was cumulative and he was also concerned about the fact that Jackson indicated, through his attorney, that his deposition testimony was perjurious and that to testify differently at trial might subject him to perjury charges. In light of this information, Tunstall's attorney opposed the introduction of Jackson's deposition testimony on the basis that Tunstall would have no way of confronting Jackson and challenging Jackson's credibility if he refused to testify, or informing the jury the reason for Jackson's refusal to testify—that is, Jackson's concern about the possibility of being subjected to perjury charges. Tunstall's attorney argued the following:

> Your Honor, I don't think that Mr. Thoman [Assistant Attorney General] in his comments and suggestions this morning has addressed the problem that we faced yesterday, and that was how to indicate to this jury that what Mr. Jackson said in his deposition is the reason that he's now invoking the Fifth Amendment, in other words, that the statements made in his deposition are perjurious.
>
> He, of course, would like to give the inference to this jury by reading in those questions and answers that it is all true and accurate. That inference is what—the importance of cross-examination and confrontation is all about, and any subsequent plea of the Fifth Amendment denies these defendants of that right.
>
> .     .     .     .     .
>
> So I would—I would say that the—the proposal still does not meet the problem of indicating to this jury the weight or the credibility that should be given to any reading of prior questions and answers.

Trial Tr. 1203–04. After hearing the arguments, the state trial court sustained the objections of Tunstall's attorney, as well as counsel for Frasier and Simpson, and ruled against the State by holding that the deposition testimony of Jackson would not be admitted into evidence, and further that Jackson would not be compelled to testify.

In his *habeas corpus* petition, Tunstall contends that his attorney's failure to introduce Jackson's deposition testimony constituted ineffective assistance of counsel. In the Supplemental Report and Recommendation, Judge Zoss agreed with Tunstall, stating:

This court is unable to find any reasonable basis for Tunstall's attorney's opposition to the admission of Jackson's deposition, or for his failure to affirmatively seek the deposition's admission into evidence. The State's case against Tunstall was not strong, and it was clearly bolstered by the joint criminal conduct argument. To find Tunstall guilty of felony murder, the jury was required to find Tunstall committed first-degree burglary, which required a finding, *inter alia*, that when Tunstall entered Jones's apartment, he had "the intent to commit a felony, assault or theft therein." Iowa Code § 713.1. The State emphasized the facts related by Officer Smith indicating Frasier and Tunstall went to the Bel–Aire Motel, threatened Jackson with a gun, and demanded to know where Jones was. The State sought to show Tunstall had the intent to commit an assault at the time he went looking for Jones with Frasier and Simpson. (*See* Trial Tr. pp. 1758–59; *see also* pp. 226, 802–03) A review of the evidence shows the joint criminal intent theory was crucial to Tunstall's conviction; even Frasier testified Tunstall was not involved in the confrontation with Jones. (*See* Trial Tr. pp. 1450–54, 1479–80, 1481) The uncontradicted hearsay testimony of Officer Smith strongly supported the State's theory of the case.

Jackson's deposition testimony would have directly contradicted this theory. Jackson testified Frasier and Tunstall came to the motel for a few minutes to talk about the "snitch" allegation; he never saw a gun; he did not feel threatened; and, at the end of the conversation, Frasier casually asked Jackson if he had seen Jones that day. Jackson said Frasier already knew where Jones lived.

Jackson's deposition testimony painted an entirely different picture from one in which Frasier and Tunstall were on a 'mission' to find Jones with the intent of assaulting him. The weight of the evidence against Tunstall was such that eroding the State's theory of shared intent to commit an assault could have affected the jury's verdict that Tunstall was guilty of first-degree burglary, a necessary prerequisite to finding him guilty of felony murder.

This court cannot agree with the PCR appellate court's conclusion that 'the impeachment value of the deposition was offset by its damaging implication of Tunstall in the crime.' (PCR Appeal at 6) The State argues in the PCR appeal that the deposition was damaging to Tunstall because Jackson actually identified Tunstall 'as one of the alleged perpetrators who came to his motel room looking for the victim prior to the murder.' (*Id.*) This mischaracterizes Jackson's testimony, which was that Tunstall accompanied Frasier to the motel when Frasier came to ask about the 'snitch' allegation. Jackson did not testify Tunstall was involved in any crime, or that Tunstall was looking for Jones. Furthermore, Tunstall himself did not deny going to the motel, and that fact was already in evidence from the 'excited utterance' to which Officer Smith testified. The court also disagrees with the PCR appellate court's conclusion that 'Tunstall has not established a reasonable probability of a different outcome had the deposition been offered into evidence.' (*Id.*)

The court finds Tunstall's trial attorney was ineffective in failing to seek to introduce Jackson's deposition into evidence. After reviewing the entire trial transcript, the court also finds Tunstall was prejudiced by that ineffectiveness, because his counsel's error was "so serious as to deprive [Tunstall] of a fair trial, a trial whose result is reliable."

*Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Given the weakness of the State's overall case against Tunstall, the court finds a reasonable probability exists that the outcome of the trial would have been different if the deposition had been offered into evidence; at least, the probability is such that it undermines confidence in the outcome. *See Tunstall v. Iowa* (PCR Appeal), No. 6–219/94–1354, at 4 (Iowa Ct.App. June 27, 1996).

Accordingly, the court finds the Iowa court's decision on this issue was an unreasonable application of the clearly-established Supreme Court law set forth in *Strickland.* The court therefore recommends that Tunstall receive a new trial. *See* Supplemental Report and Recommendation at 33–35.[3]

The respondents have filed objections to this portion of the Supplemental Report and Recommendation. Specifically, respondents state that while they agree with the controlling Supreme Court precedent identified by Judge Zoss in the Supplemental Report and Recommendation, namely, *Strickland,* they argue that Judge Zoss's analysis of this ineffective assis-

tance of counsel claim is in error, because it fails to consider the totality of the evidence under both the performance and prejudice prongs, and it fails to accord the appropriate level of deference and presumption of competence as required by *Strickland.* This court agrees with the respondents.

■ The court finds it highly significant that Tunstall's attorney vigorously opposed the introduction of Jackson's deposition testimony, setting forth logical reasons in support of his opposition, which are outlined above. It is clear that the State wanted to introduce portions of Jackson's deposition testimony to buttress its case in chief against Tunstall and his codefendants, because Jackson's deposition testimony provided additional inculpatory information against Tunstall and his codefendants. For example, Officer Smith generally testified that Jackson identified four black men who visited him at the Bel–Aire Motel, whereas Jackson, in his deposition testimony, identified two of the men as Tunstall and codefendant Frasier. Thus, even though portions of Jackson's deposition testimony may indeed have contradicted Officer Smith's testimony, other

---

3. Under this ineffective assistance of counsel claim, Judge Zoss analyzed the trial court's ruling, that is, the trial court's decision to exclude the deposition testimony of Dennis Jackson. Judge Zoss concluded that the trial court erred in failing to allow the State to introduce Jackson's deposition as primary evidence, however, Judge Zoss noted that the trial court never had the opportunity to rule on whether the defendants could introduce the deposition. Indeed, Judge Zoss points out that only the State moved for its admission, and that Tunstall's attorney opposed its admission, for any purpose. *See* Supplemental Report and Recommendation at 29. While the court sees the distinction that Judge Zoss delineates—the State seeking to introduce the deposition testimony versus Tunstall seeking to introduce the deposition testimony—the court finds such distinction inconsequential here. This is so, because based on their vig-

orous opposition to the admission of Jackson's deposition testimony into evidence, all three defense attorneys, including Tunstall's attorney, decided that Jackson's deposition testimony would be more detrimental than beneficial to their case. Tunstall's attorney's resistance to the State's request to have Dennis Jackson's deposition testimony introduced into evidence indicates to this court that a decision had been made as to how best handle Jackson's deposition testimony. Based on Tunstall's attorney's conduct, he clearly believed that it was in Tunstall's best interest that the jury not be made privy to Jackson's deposition testimony. Furthermore, the court finds that whether the trial court did in fact err in sustaining Tunstall's attorney's resistance to the introduction of Jackson's deposition testimony into evidence sheds no light on whether Tunstall's attorney was ineffective in this case.

portions of Jackson's deposition testimony supplemented Officer Smith's testimony with inculpatory information regarding Tunstall. Tunstall's attorney recognized this, and acted in what he thought was the best interests of Tunstall. Significantly, Tunstall has presented no evidence to overcome the presumption that, under the circumstances, Tunstall's attorney's failure to introduce the deposition testimony of Jackson "might be considered sound trial strategy." *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (citation omitted). In doing so, this court declines to conclude that Tunstall's attorney's failure to introduce Jackson's deposition testimony was unreasonable as a matter of strategy, especially in light of the Supreme Court's pronouncements that "[t]here are countless ways to provide effective assistance in any given case," and "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Additionally, the court notes that all three attorneys opposed the introduction of Jackson's deposition testimony into evidence. Therefore, despite Judge Zoss's comment that "this court is unable to find any reasonable basis for Tunstall's attorney's opposition to the admission of Jackson's deposition, or for his failure to affirmatively seek the deposition's admission into evidence," this court will not use the lens of hindsight to second-guess a decision of trial counsel. In *Strickland,* the Supreme Court cautioned that, in evaluating ineffective assistance of counsel claims, a court must avoid the "distorting effects of hindsight" and "evaluate the [challenged] conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 669, 104 S.Ct. 2052. Therefore, because the court finds that the Iowa courts correctly identified *Strickland* as the controlling legal principle, and did not unreasonably apply the *Strickland* framework to the facts of this case, respondents'

objections to Judge Zoss's findings in the Supplemental Report and Recommendation with respect to this claim are sustained. Accordingly, the court rejects this portion of the Supplemental Report and Recommendation, and, thus, denies Tunstall relief on his claim for ineffective assistance of counsel in failing to introduce the deposition testimony of Dennis Jackson.

The court is also troubled by the fact that Tunstall contends that his attorney was ineffective in failing to introduce testimony that, by all accounts, was perjurious. The following colloquy amongst Tunstall's attorney, Mr. Wenell, Jackson's attorney, Mr. Faith, and the court is illustrative:

> MR. WENELL: Your Honor, first I direct a question to Mr. Faith, as Mr. Jackson's lawyer.
>
> Do I understand clearly, Mr. Faith, that Mr. Jackson, your client, is invoking the Fifth Amendment here today on account of matters or statements that he made on a prior occasion, namely, in these depositions dated perhaps October 15th and November 20th, 1986, in that if he testifies today, his testimony may be different and he would be subject to perjury arising out of what he said on prior occasions; is that correct?
>
> MR. FAITH: Yes.
>
> MR. WENELL: Then I would—inquire or say to the court that the circumstances we have here is that Mr. Thoman is proposing to read from the deposition that the witness's lawyer had said he's concerned about subjecting himself to perjury on.
>
> Now, I think I made a similar argument earlier with regard to other statements of the defendant Simpson. What Mr. Thoman is preparing here to do is to attempt to read into this record in front of this jury statements that the

witness's lawyer is concerned about perjury on.

And I guess if that's what's going to happen, then I think we should have such an instruction to this jury that this testimony you're about to hear from this deposition, that the witness's lawyer is concerned about him being charged for perjury, if that's what we're going to do, because these defendants are entitled to show and to inquire of and to demonstrate the credibility of this witness.

And as the court has suggested, perhaps we get to cross-examine—cross-examine him, and he pleads his Fifth Amendment to other things, but it seems to me we're entitled to show the—his credibility and we're entitled to cross-examine; if not about those exact things, we're entitled to show this jury that he is concerned about being charged for perjury on those statements.

And I can't—I follow Mr. Thoman's pursuit through the rules and to use prior statement. However, there are other requirements. He has to show that the motive of these defendants at a prior—at the prior hearing was exactly the same.

**THE COURT:** Well, it wouldn't be. Your motive at that prior hearing was to demonstrate whatever was favorable to your clients.

**MR. WENELL:** That's exactly right. The court has indicated that our motive—our motive at the prior time was much different than what it is at this time.

And also at the prior time, of course, we had no idea that that—what has happened now, this fellow is going to come in and say that was all perjured or subjects me to perjury.

So it doesn't seem to me, Your Honor, that it's going to be granting these defendants their full right of cross-examination or confrontation or effective use of counsel to read certain questions from a deposition and we not be able to show to this jury that the reason this fellow doesn't want to talk about those—those items is because being subjected to perjury.

So I would—although perhaps there is a path through this that Mr. Thoman is suggesting, I would say that this is an exception to that kind of a path because of—of the difference in the motives in the prior examination and, also, because the sheer reason and the simple reason for him invoking the Fifth today is because of perjury of those earlier statements.

Trial Tr. 1088–91. In *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), the Supreme Court stated, "[a]lthough counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Id.* at 166, 106 S.Ct. 988. In this case, Tunstall's attorney was concerned about the fact that Jackson's deposition testimony was perjurious, and that if such evidence was introduced and Jackson invoked his Fifth Amendment when called to testify, Tunstall would never be able to cross-examine him. In other words, Tunstall's attorney was concerned that despite the probable fact that Jackson's deposition testimony was perjurious, it would be introduced into evidence and the jury would be left with the impression that Jackson's deposition was accurate and truthful when, in fact, it was not. Because Tunstall's attorney understood the reason for Jackson's refusal to testify at the trial, to disregard such information in the interests of Tunstall—that is, to seek the introduction of testimony that he understood to be perjurious—would run afoul of his ethical duty. *See id.* at 168, 106 S.Ct. 988 ("These

standards confirm that the legal profession has accepted that an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; it specifically ensures that the client may not use false evidence."). This court is hard-pressed in finding that Tunstall's attorney's performance was deficient because he failed to introduce evidence that he believed in good faith was perjurious. Therefore, the court sustains respondents' objections to this portion of the Supplemental Report and Recommendation because Tunstall's attorney's conscious and active decision in opposing the introduction of Jackson's deposition testimony into evidence was clearly the result of strategy exercised in the heat of trial that was not objectively unreasonable. *See Strickland,* 466 U.S. at 686, 104 S.Ct. 2052 (explaining that with respect to the performance prong, a *habeas* petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness").

### 3. *Counsel's failure to move for a mistrial*

Tunstall also argues that his attorney was ineffective in failing to move for a mistrial after the State amended the charges against him, thereby excluding the theory of premeditation. As Judge Zoss noted in the Supplemental Report and Recommendation, Tunstall raised this issue in his PCR action, and the PCR court concluded that Tunstall's attorney was not ineffective in failing to move for a mistrial. However, Tunstall failed to renew this claim in his PCR appeal. Judge Zoss concluded that this claim, therefore, was procedurally defaulted and not properly before the court. *See Lamp v. Iowa,* 122 F.3d 1100, 1104 (8th Cir.1997) ("The failure to raise the ineffective assistance claims in an appeal from the denial of [post-conviction] relief raises a procedural

bar to pursuing those claims in federal court.") (citation omitted). In his objections, Tunstall acknowledges that he did not raise this issue in his PCR appeal, however, he argues that "procedural default can be waived if the failure to consider the claim will result in a 'substantial miscarriage of justice.'" *See* Petitioner's Supplemental Objection to Supplemental Report and Recommendation at 1–2 (citing *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Tunstall asks this court to consider this claim because he argues that it is integrally related to an issue that is properly before the court, namely, the failure of counsel to introduce the deposition testimony of Dennis Jackson.

■■ A federal habeas petitioner can overcome a procedural default or an abuse of the writ by showing cause and prejudice, *see McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) or by showing "that a fundamental miscarriage of justice would result from a failure to entertain the claim," *id.* at 495, 111 S.Ct. 1454. To establish cause for his procedural default, Tunstall must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In proceedings in which the Sixth Amendment requires legal representation, ineffective assistance of counsel is cause for a procedural default. *See id.* In order to use the miscarriage of justice exception to a procedural bar, *see Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), a petitioner must offer new reliable evidence of his innocence, in light of which "it is more likely than not that no reasonable juror would have convicted him." *Knox v. Iowa,* 131 F.3d 1278, 1282 (8th Cir.1997) (citing *Schlup v. Delo,*

513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

■ As indicated previously, Tunstall attempts to avoid this result by arguing that he has shown cause for his failure to properly raise the claim concerning his attorney's failure to move for a mistrial after the State dropped its theory of premeditation against Tunstall because it is integrally related to the ineffective assistance of counsel claim based on his attorney's failure to introduce the deposition testimony of Dennis Jackson. The court, however, finds that Tunstall has failed to establish cause to excuse his procedural default. This is so for two reasons. First, the court finds it significant that Tunstall asserted this basis for an ineffective assistance of counsel claim during his PCR action, yet did not renew it during his PCR appeal. Tunstall renewed the other grounds upon which he claims ineffective assistance of counsel in both the PCR action and PCR appeal. Thus, the court is hard pressed to believe that the reason why Tunstall elected not to renew this claim during his PCR appeal had to do with the fact that is was integrally related to his attorney's failure to introduce the deposition of Dennis Jackson, especially in light of the fact that he unambiguously asserted each claim separately in his PCR action. Second, the court disagrees with Tunstall's assertion that "The Jackson hearsay was allegedly relevant, and thus admissible, only to buttress the State's argument in support of that theory." See Petitioner's Supplemental Objection to Supplemental Report and Recommendation at 2. The court points out that the State also pursued a felony-murder theory against Tunstall with the underlying felony being first-degree burglary, which required a finding, *inter alia*, that when Tunstall entered Jones's apartment, he had "the intent to commit a felony, assault or theft therein." Iowa Code § 713.1. Therefore, contrary to Tunstall's conten-

tion, the court finds that Jackson's hearsay was not only relevant to the State's premeditation theory, but also to the State's felony-murder theory. Regardless, because Tunstall failed to raise this claim during his PCR appeal, and because Tunstall has not established cause to excuse his procedural default, the court concludes that this ineffective assistance of counsel claim is procedurally defaulted. Furthermore, Tunstall has not presented new evidence of his innocence. He merely asserts that his trial was unfair because his attorney was ineffective in failing to move for a mistrial after the State amended the charges against him and that it would be a fundamental miscarriage of justice not to be able to have a thorough review of this claim on the merits. He thus does not meet the actual innocence standard to open a gateway for consideration of the merits of his procedurally defaulted claim. *See Schlup*, 513 U.S. at 316, 115 S.Ct. 851 (explaining that a claim of innocence is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits). Accordingly, the court overrules Tunstall's objection to this portion of the Supplemental Report and Recommendation.

### D. Assertions of Trial Court Error

#### 1. Allowance of hearsay testimony

Tunstall argues that the trial court erred in allowing the State to offer hearsay testimony by Officer Kelvin Smith about statements purportedly made by Dennis Jackson. The trial court admitted the testimony of Kelvin Smith under the excited utterance exception to the hearsay rule. In the Supplemental Report and Recommendation, Judge Zoss found that although Tunstall raised a claim relating to the trial court's admission of hearsay testimony, he failed to exhaust his constitutional claim in a proper manner. Specifically, Judge Zoss stated that "the Iowa courts

never had an opportunity to pass upon, and potentially correct, the alleged violation of federal constitutional rights Tunstall raises in this assertion of error. Providing the State with such an opportunity is a necessary precursor to federal review." *See* Supplemental Report and Recommendation at 37. Additionally, Judge Zoss noted that Tunstall has not even attempted to show cause or prejudice for his failure to argue this claim to the Iowa courts on constitutional grounds. Thus, Judge Zoss concluded that this claim failed because it was unexhausted and procedurally defaulted.

Tunstall objects to Judge Zoss's finding and argues that this issue is ripe for review because of a footnote in *Morrow v. Wyrick,* 646 F.2d 1229, 1232 n. 5 (8th Cir.1981). Tunstall argues that his direct appeal brief is similar to that found in *Morrow,* and, therefore, Judge Zoss should have considered this issue on the merits. In *Morrow,* the state prisoner objected to the admission of hearsay by the trial court, and the Eighth Circuit Court of Appeals concluded that although the Constitution was not expressly invoked during the prisoner's state court appeal, the issue was not defaulted for the following reasons. First, the *Morrow* court explained that although the petitioner's brief in the state appellate court was not a model of legal drafting, the petitioner's basic argument that the introduction of the challenged testimony deprived him of the right to confront and cross-examine witnesses was discernible. *Id.* at 1232. The *Morrow* court dropped the following footnote in support thereof:

> Petitioner's state appellate brief emphasizes the hearsay aspects of the unavailable witness testimony problem and thus can be said to have raised the confrontation clause only implicitly. We do not think that an evidentiary focus necessarily means that the constitutional issue was not "fairly presented" to the state court. The hearsay rules and the con-

frontation clause are intimately related, though not identical in purpose or scope. *Id.* at 1232 n. 5 (citation omitted). Second, the *Morrow* court then noted that the petitioner cited in support of the confrontation argument several state cases which specifically discussed the question of the admissibility of preliminary hearing testimony of unavailable witnesses. *Id.* at 1232. Third, and most significantly, the *Morrow* court noted that the state was able to identify the substance of petitioner's points of error and to address the merits, citing two of the landmark Supreme Court cases on the confrontation clause. *Id.*

■ In this case, the State addressed only Tunstall's claim of evidentiary error under the excited utterance exception to the hearsay rule in its brief. Additionally, neither Tunstall nor respondents cited to any Supreme Court decisions, and the state courts did not address this claim as a constitutional claim; rather, the state court's review of the trial court's ruling regarding the admissibility of the hearsay statements consisted of analyzing that ruling under the excited utterance exception to the hearsay rule. In so doing, the facts in this case are distinguishable to the facts in *Morrow,* upon which Tunstall relies. Consequently, this court overrules Tunstall's objections, and finds that he failed to fairly present his federal constitutional claim to the state court. *See Frey v. Schuetzle,* 151 F.3d 893, 897 (8th Cir.1998). Therefore, the court overrules Tunstall's objections to the Supplemental Report and Recommendation, and finds that this claim is unexhausted and procedurally defaulted.

### 2. *Other assertions of trial court error*

In his *habeas corpus* petition, Tunstall asserts that the trial court erred in the following respects: (1) allowing codefendant Frasier to testify about the victim's

violent and aggressive character; (2) limiting his attorney's cross-examination of State witness Christine Buddi; (3) allowing the prosecution to examine codefendant Simpson about previously suppressed evidence; (4) admitting a knife into evidence; (5) improperly instructing the jury; and (6) denying his motion in arrest of judgment or, in the alternative, motion for new trial. Neither Tunstall nor respondents have filed objections to those portions of the Supplemental Report and Recommendation in which these claims were analyzed. Therefore, the court concludes that a *de novo* review—required under the plain language of the statute only for "those portions of the report or specified proposed findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1)—is not required with respect to these claims; rather, the court will review only for plain error. *See Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir .1994) (reviewing factual findings for plain error where no objections to magistrate judge's report were filed).

Having reviewed the record, Judge Zoss's findings of fact and conclusions of law in the March 21, 2001, Supplemental Report and Recommendation, the court noting the lack of any objections to the portions of the Supplemental Report and Recommendation with respect to the six claims outlined above, the court finds no error and accepts the Supplemental Report and Recommendation as to these claims.

### E.  Certificate of Appealability

In the Supplemental Report and Recommendation, Judge Zoss recommends that a certificate of appealability be granted with respect to the following three issues: (1) whether the trial court erred in failing to *voir dire* the jury; (2) whether Tunstall's trial attorney was ineffective in failing to request *voir dire* of the jury, and (3) whether Tunstall's attorney was ineffective

in failing to introduce the Jackson deposition. Specifically, Judge Zoss states:

> Tunstall has raised issues which might constitute a substantial showing that he was deprived of a constitutional right. Specifically, the issues of whether the trial court erred in failing to *voir dire* the jury, and whether Tunstall's trial attorney was ineffective in failing to request *voir dire* of the jury, raise significant constitutional questions. Therefore, the court recommends a certificate of appealability be granted on those two issues. If the District Court overrules this Report and Recommendation on the issue of counsel's ineffectiveness in failing to introduce the Jackson deposition, then the court recommends a certificate of appealability be granted on that issue, as well.

*See* Supplemental Report and Recommendation at 53.

■ Tunstall must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability on these three issues. *See Garrett v. United States,* 211 F.3d 1075, 1076–77 (8th Cir.2000); *Mills v. Norris,* 187 F.3d 881, 882 n. 1 (8th Cir.1999); *Carter v. Hopkins,* 151 F.3d 872, 873–74 (8th Cir.1998); *Ramsey v. Bowersox,* 149 F.3d 749 (8th Cir.1998); *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir.1997), *cert. denied,* 525 U.S. 834, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox,* 133 F.3d at 569. Because the court finds that Tunstall has made a substantial showing of the denial of a constitutional right with respect to these three claims, the court concludes that Tunstall's application for a certificate of appealability should be granted. Thus, the court overrules respondents' objection

to that portion of the Supplemental Report and Recommendation.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court overrules Tunstall's objections to the Supplemental Report and Recommendation with respect to the following claims: (1) counsel's failure to request *voir dire* of the jury panel; (2) counsel's failure to move for mistrial; and (3) and trial court's error in allowing hearsay testimony. In doing so, the court adopts Judge Zoss's findings in the Supplemental Report and Recommendation as to these claims. Moreover, the court sustains respondents' objections to the Supplemental Report and Recommendation with respect to Tunstall's ineffective assistance of counsel claim based on counsel's failure to introduce the deposition testimony of Dennis Jackson. In doing so, the court rejects this portion of the Supplemental Report and Recommendation, and concludes that Tunstall is not entitled to a new trial based on this claim. Lastly, the court overrules respondents' objection to the Supplemental Report and Recommendation concerning the certificate of appealability. In doing so, the court accepts that portion of the Supplemental Report and Recommendation, and concludes that Tunstall is entitled to a certificate of appealability as to the three claims identified above.

**IT IS SO ORDERED.**